UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11043-GAO

SANTANDER HOLDINGS USA, INC. & SUBSIDIARIES,
Plaintiff,

v.

UNITED STATES OF AMERICA,
Defendant.

OPINION AND ORDER
July 17, 2018

O'TOOLE, D.J.

The plaintiff, Santander Holdings USA, Inc., formerly known as Sovereign Bancorp, Inc. ("Sovereign"), filed this suit to recover approximately $234 million in federal taxes, penalties, and interest that were assessed and collected by the Internal Revenue Service ("IRS") in connection with Sovereign's "Structured Trust Advantaged Repackaged Securities" ("STARS") transaction. Because the facts of this case and the details of the STARS transaction have been described in other opinions related to this litigation, there is no need to repeat them here.[1] Familiarity with the general outline of the parties' dispute is presumed.

In what is now the controlling decision, the Court of Appeals concluded that the STARS Trust transaction was profitless and that it was shaped solely by tax-avoidance features and therefore lacked economic substance. Accordingly, the court concluded that Sovereign's claims

---

[1] See Santander Holdings USA, Inc. v. United States (Santander Holdings), 844 F.3d 15, 19 (1st Cir. 2016), cert. denied sub nom. Santander Holdings USA, Inc., & Subsidiaries v. United States, 137 S. Ct. 2295 (2017); Santander Holdings USA, Inc. v. United States (Santander II), 144 F. Supp. 3d 239, 240–41 (D. Mass. 2015); Santander Holdings USA, Inc. v. United States (Santander I), 977 F. Supp. 2d 46, 47–49 (D. Mass. 2013).

for credits under I.R.C. § 901 for the U.K. taxes it paid as a consequence of the Trust transaction were properly disallowed by the IRS. Santander Holdings, 844 F.3d at 21–26. After appeal, the case was remanded "for a trial limited to the penalties issue." (Judgment at 1, Dec. 16, 2016 (dkt. no. 303).) Upon remand, Sovereign has moved for summary judgment on two distinct issues. The first seeks a ruling that, "as a matter of law, Sovereign cannot be subject to . . . negligence or substantial understatement penalties." (Pl.'s Mot. for Summ. J. Regarding Penalties 1 (dkt. no. 320).) The second seeks a determination that "Sovereign is entitled to a deduction for the U.K. taxes it paid in connection with the STARS transaction." (Pl.'s Mot. for Summ. J. Regarding Deduction for Foreign Tax Expense 1 (dkt. no. 322).) The parties briefed the issues thoroughly and were heard at oral argument.

## I.  Summary Judgment Regarding Penalties

In 2008, the IRS disallowed foreign tax credits and interest expense deductions that Sovereign claimed with respect to the STARS transaction for the taxable years 2003 through 2005. In addition, it imposed two accuracy-related penalties on the resulting tax underpayment for (1) negligence or disregard of rules or regulations, I.R.C. § 6662(b)(1), and (2) substantial understatement of income tax, id. § 6662(b)(2). The assessment of either of these non-cumulative penalties would require Sovereign to pay an additional twenty percent of the amount of underpayment of taxes. Treas. Reg. § 1.6662–2(c). Sovereign now argues, however, that it cannot be liable for either penalty because it has, as a matter of law, satisfied the criteria for recognized defenses to the assessment of the penalties.

To avoid liability for the negligence penalty, a taxpayer must show that it had a "reasonable basis" for the return position that resulted in the understatement. Id. § 1.6662–3(b)(1). "Reasonable basis" is a relatively high standard, requiring a taxpayer to show, based on one or more of the

acceptable authorities enumerated in the Treasury regulations,[2] that its return position was more than merely arguable or colorable. Id. § 1.6662–3(b)(3). Defending the substantial understatement penalty is more difficult. It requires the taxpayer to show that there was either a reasonable basis for the chosen tax treatment that the taxpayer had "adequately disclosed" to the IRS, or "substantial authority" to support the taxpayer's return position that resulted in the understatement. I.R.C. § 6662(d)(2)(B). "Substantial authority" is an objective standard that is higher than a "reasonable basis" and is satisfied "if the weight of the [enumerated] authorities supporting the treatment is substantial in relation to the weight of [such] authorities supporting contrary treatment." Treas. Reg. § 1.6662–4(d)(3)(i).[3]

Courts have generally held, and the government now argues, that there is no reasonable basis, and no authority, substantial or otherwise, to support a claim for a credit or deduction for a transaction that lacks economic substance, such as the Trust transaction. See Salem Fin., Inc. v. United States, 112 Fed. Cl. 543, 593 (2013), aff'd in part, rev'd in part, and remanded, 786 F.3d 932 (Fed. Cir. 2015); Stobie Creek Invs., LLC v. United States, 82 Fed. Cl. 636, 706–07 (2008); Santa Monica Pictures, LLC v. Commissioner, 89 T.C.M. (CCH) 1157, *100 (T.C. 2005); Long Term Capital Holdings v. United States, 330 F. Supp. 2d 122, 204 (D. Conn. 2004), aff'd sub nom. Long-Term Capital Holdings, LP v. United States, 150 F. App'x 40 (2d Cir. 2005). This general proposition seems to follow logically from the application of the economic substance doctrine, as it would make little sense to allow a taxpayer, whose transaction was determined objectively to lack economic substance notwithstanding technical compliance with the

---

[2] These authorities include the tax code, treasury regulations, revenue rulings and proceedings, tax treaties, IRS notices or announcements, and case law, among others. Id. § 1.6662–4(d)(3)(iii).
[3] Sovereign acknowledges that "reasonable cause and good faith" may also be a defense to both understatement penalties, I.R.C. § 6664(c)(1), but recognizes that proof of that defense requires proof of potentially disputed facts and so does not presently seek summary judgment on that issue.

tax code and relevant authorities, to nevertheless avoid the penalties associated with the sham transaction by relying on the same authorities that were rejected in the assessment of the transaction's economic substance. Sovereign does not attempt to refute this general proposition, but rather argues that it should not apply in the present case because the Court of Appeals created "new law" when it determined that foreign tax payments should be regarded as a pre-tax expense in assessing the profitability of the Trust, (Pl.'s Memo. in Supp. of Mot. for Summ. J. Regarding Penalties 2 (dkt. no. 321)), an approach that Sovereign argues was contrary to the decisions in Compaq Computer Corp. v. Commissioner, 277 F.3d 778 (5th Cir. 2001), and IES Industries, Inc. v. United States, 253 F.3d 350 (8th Cir. 2001), the only cases that had addressed whether foreign taxes should be considered pre- or post-tax items at that time that Sovereign entered the STARS transaction (and filed the relevant tax returns). The gist of Sovereign's argument is that the circuit's ultimate holding, that the Trust transaction lacked economic substance, rested on the conclusion that Compaq and IES were too factually distinguishable to provide controlling guidance regarding the treatment of foreign tax expenses, Santander Holdings, 844 F.3d at 22–24, n.11, which was in effect "new law," and therefore should not trigger the broad general rule foreclosing penalty defenses. This proposition underlies all of Sovereign's present arguments.

The economic substance of the Trust transaction was the central issue in the circuit court's decision, and it was resolved against Sovereign. Any disagreements that Sovereign had with the court's decision, and any potential for relief from it, including the present contention that the decision created "new law," were extinguished by the denial of Sovereign's petition for certiorari. (See Order, Jun. 26, 2017 (dkt. no. 313) (denying petition for writ of certiorari).)

Sovereign now argues that it was reasonable to rely on the Compaq and IES cases because they were the only appellate guidance at the time of the STARS transaction on the question of pre-

4

or post-tax treatment of foreign taxes, and *for that reason* they are sufficient for defending the understatement penalties. But this misses the circuit's point, which was that the factual circumstances of the two prior cases were sufficiently different from the STARS circumstances that, even at the time of the STARS transaction, it was unreasonable to rely on them as guidance. See Santander Holdings, 844 F.3d at 24 n.11. In other words, the question whether there was a "reasonable basis" for Sovereign's reliance on Compaq and IES has already been determined adversely to Sovereign by the circuit's opinion.

Sovereign is not entitled to judgement as a matter of law that it had a reasonable basis for or substantial authority in support of its reporting position regarding the pre-tax accounting for foreign taxes paid.

## II. Summary Judgment Regarding Deduction for Foreign Tax Expense

Sovereign next argues that it is entitled to expense deductions under I.R.C. § 164 for the U.K. taxes paid on the Trust transaction, notwithstanding the denial of credits for those same expenses under § 901. It claims that the circuit's decision regarding the transaction's lack of economic substance was confined to what was directly and formally at issue, foreign tax credits under § 901, and that the language of § 164 establishes congressional intent to allow expense deductions even though credits are disallowed or the underlying business transactions are unprofitable.

### A. Mandate Rule

As a preliminary matter, the government argues that Sovereign has waived any claim for expense deductions by not presenting the issue as an alternative argument during the appeal, and by failing to petition for rehearing after the circuit's decision. Alternatively, it contends that the deduction claims were implicitly rejected by the circuit's ruling that the transaction lacked

substance and the judgment's directive "for a trial limited to the penalties issue." (Judgment at 1, Dec. 16, 2016.)

"Under this circuit's 'law of the case' doctrine, the mandate rule, 'with only a few exceptions, forbids, among other things, a lower court from relitigating issues that were decided by a higher court, whether explicitly or by reasonable implication, at an earlier stage of the same case.'" de Jesus-Mangual v. Rodriguez, 383 F.3d 1, 6 (1st Cir. 2004) (quoting Municipality of San Juan v. Rullan, 318 F.3d 26, 29 (1st Cir. 2003)).

In the present case, the issue of expense deductions was not addressed by the Court of Appeals either explicitly or implicitly. It is undisputed that the deductibility of Trust tax expenses was not an issue specifically addressed by either party in the prior cross-motions for summary judgment in this court. Rather to the contrary, Sovereign expressly stated in its motion and papers that it was only seeking judgment on its refund claims that were asserted in Counts I through III and VII of the Amended Complaint, not the alternative claims for a deduction (Counts IV–VI). See Santander II, 144 F. Supp. 3d at 241 & n.1. When Sovereign initially prevailed on the refund claims, the alternative claims were superfluous and were terminated as moot.[4] There is no indication that those claims were the subject of any consideration in the Court of Appeals. The reversal of the district court judgment in Sovereign's favor effectively nullified the basis for the prior mootness determination. There is no reason to think that the Court of Appeals intended its remand order s*ub silentio* to preclude the "unmooting" of alternate claims once Sovereign's success on the mooting claims was reversed. It would seem an unduly expansive application of the mandate rule to read the judgment and mandate as precluding the consideration of untried claims

---

[4] They would not have been mooted by an alternate resolution of the refund claims by this Court, and they presumably would have been pressed by Sovereign.

6

that were validly pled and were mooted only by reason of the plaintiff's initial success on its primary claims.

B.  Deductions Under § 164

Sovereign's claim for a deduction under § 164 is really a dispute about the consequences of the circuit's conclusion that the Trust transaction lacked economic substance. The parties agree that transactions lacking economic substance are generally disregarded for tax purposes. See Gregory v. Helvering, 293 U.S. 465, 470 (1935); Salem Fin., Inc. v. United States, 786 F.3d 932, 942, 954–55 (Fed. Cir. 2015); Klamath Strategic Inv. Fund ex rel. St. Croix Ventures v. United States, 568 F.3d 537, 549 (5th Cir. 2009). But they disagree on the extent of the disregard. The government contends that transactions lacking substance are disregarded for all tax purposes, which, if true, would bar Sovereign's present claim for expense deductions, whereas Sovereign claims that such transactions are only disregarded for the purposes of the particular section of the tax code under which the rejected tax benefit was sought. In other words, Sovereign argues that the economic substance doctrine is a section-specific inquiry that must be applied separately based on the language and purpose of each section of the tax code. If true, the Trust's lack of substance under § 901 would not have the effect of precluding it from receiving the benefits of a deduction under § 164.

Sovereign does not cite persuasive authority in support of this approach, nor does it successfully distinguish any of the case law cited by the government to the contrary. See, e.g., Salem, 786 F.3d at 942 ("Under this doctrine, we disregard the tax consequences of transactions that comply with the literal terms of the tax code, but nonetheless lack economic reality." (quoting Stobie Creek, 608 F.3d at 1375)); Klamath, 568 F.3d at 549 ("[W]hen a transaction is disregarded for lack of economic substance, deductions for costs expended in

furtherance of the transaction are prohibited."); Winn-Dixie Stores, Inc. v. Commissioner, 113 T.C. 254, 279 (1999) ("A transaction that lacks substance is not recognized for Federal tax purposes."), aff'd, 254 F.3d 1313 (11th Cir. 2001).

Sovereign instead claims that close analysis of the Court of Appeals opinion in this case supports a conclusion that the court was applying a section-specific approach. It cites various statements by the circuit court that it says show that the court was conducting a narrow analysis pertinent only to the question of disallowing a foreign tax credit. See Santander Holdings, 844 F.3d at 23 ("The STARS Trust transaction itself does not have a reasonable prospect of creating a profit without considering the *foreign tax credits*, and, as a result, it is not a transaction for which Congress intended to give the benefit of the foreign tax credit." (emphasis added)); id. ("Most importantly, we agree with the Federal Circuit that the Trust transaction is profitless, and that it is 'not the type of transaction Congress intended to promote with the *foreign tax credit system*.'" (emphasis added) (citation omitted)); id. at 24 ("Accordingly, we conclude both that the STARS Trust transaction had no objective non-tax economic benefit and that Congress, in creating the *foreign tax credit regime*, did not intend that it would cover this type of generated transaction." (emphasis added)); id. at 25 ("The Trust transaction did not advance the Tax Code's interest in providing foreign tax credits in order to encourage business abroad or in avoiding double taxation." (emphasis added)). So, the argument goes, these specific references would not have been necessary if the economic substance analysis were not a section specific-inquiry anchored to the language and purpose of particular sections of the code. Therefore, the specific references prove that a lack of economic substance must be shown on a section-specific basis and the deductibility of taxes as an expense is an open question in the case, not foreclosed by the circuit's decision.

However, there are also broader statements by the Court of Appeals about the tax code generally that count against Sovereign's proposed inference. For example:

> [W]hen a transaction 'is one designed to produce tax gains . . . not real gains,' [Dewees v. Commissioner, 870 F.2d 21, 31 (1st Cir. 1989),]—such as when the challenged transaction has no prospect for pre-tax profit—then it is an act of tax evasion that, even if technically compliant, lies outside of the intent of the *Tax Code* and so lacks economic substance.

Santander Holdings, 844 F.3d at 23 (emphasis added). Other cases have similarly spoken broadly about the tax code as a whole in describing the consequences of the economic substance doctrine. See, e.g., Coltec Indus., Inc. v. United States, 454 F.3d 1340, 1352 (Fed. Cir. 2006) ("Over the last seventy years, the economic substance doctrine has required disregarding, for tax purposes, transactions that comply with the literal terms of the tax code but lack economic reality."); ACM P'ship v. Commissioner, 157 F.3d 231, 261 (3d Cir. 1998) ("[A] transaction that lacks economic substance 'simply is not recognized for federal taxation purposes, for better or for worse,' and we are not aware of any cases applying the economic substance doctrine selectively to recognize the consequences of a taxpayer's actions for some tax purposes but not others." (quoting Lerman v. Commissioner, 939 F.2d 44, 45 (3d Cir. 1991))); United States v. Wexler, 31 F.3d 117, 122 (3d Cir. 1994) ("Where a transaction has no substance other than to create deductions, the transaction is disregarded for tax purposes."). The broader proposition appears to be the one generally accepted: a transaction's lack of economic substance is broadly fatal to tax benefits that arise only because of the condemned contrivance.

Sovereign is not entitled to a ruling that the lack of economic substance ruling that is now the law of this case is confined to the specific context of the foreign tax credit and does not also bar the deduction of expenses under § 164.

**III.**     **Conclusion**

For the reasons stated, Sovereign's Motion for Summary Judgment Regarding Penalties (dkt. no. 320) and Motion for Summary Judgment Regarding Deduction for Foreign Tax Expense (dkt. no. 322) are DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge